UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RIVERS D. DALTON,

            Plaintiff,

v.                                   Case No: 2:13-cv-734-FtM-29MRM

L. SEVERSON, Warden at
Charlotte State Prison,
individually and in their
official capacities and C.O.
REINECK,

            Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon review of Defendants'
motion for summary judgment. (Doc. #65, Motion.)  Attached to
Defendants' motion are the following supporting exhibits: copies
of pertinent inmate grievances and responses thereto (Doc. #65-1,
OAG 1-4, OAG 21-23); internal movement form for inmate Tyler Reed
depicting cell movements from  May 23, 2012 through February 1,
2013 (Doc. #65-1, OAG 5); Florida Department of Corrections
Inspector General Grievance Log Form (Doc. #65-1, OAG 6); internal
movement form for Plaintiff depicting cell movements from August
13, 2012 through December 28, 2012 (Doc. #65-1, OAG 7); Florida
Department of Corrections Daily Security Roster from the year 2012
dated October 6, October 8, October 24, for the day and evening
shifts of October 25, for the day and evening shifts of October 26

(Doc. #65-1, OAG 8-12, OAG 15, OAG 20); Department of Corrections Housing Unit Log dated October 25-26, 2012 (Doc. #65-1, OAG 13-14); Affidavit of L. Severson (Doc. #65-1, OAG 16-17); and Affidavit of Thomas Reid (Doc. #65-1, OAG 18-19).[1]

Plaintiff filed several responses opposing Defendants' motion. (See Docs. #66, #67, #71, hereinafter "Pl's Response".) Plaintiff attaches supporting evidence including: his affidavit (Doc. #71-1, Pl's Aff.); Refusal for HIV testing form dated October 29, 2012 (Doc. #71-2, hereinafter "Pl's Test Refusal Form"); Department of Corrections' Office of Health Services Abrasion/Laceration Protocol Form completed October 25, 2012 (Doc. #71-3 at 1-2, hereinafter "Pl's Medical Form"); and Plaintiff's Department of Corrections Mental Health Screening Form dated November 2, 2012 (Doc. #71-4 at 1-2). This matter is ripe for review.

## I.

Rivers Dalton, an inmate in the custody of the Secretary of the Florida Department of Corrections, initiated this action proceeding *pro se* by filing a Prisoner Civil Rights Complaint Form under 42 U.S.C. § 1983 (Doc. #1, Complaint.) The Complaint alleges a violation of Plaintiff's Eighth Amendment rights under the United

---

[1]The Court will also refer to the Defendants' bate stamps affixed to the bottom of their exhibits, e.g. OAG 1- OAG 23, for consistency in citations.

States Constitution stemming from defendants' failure to protect Plaintiff from two different cellmates' attacks, on two different dates in October of 2012, and a deliberate indifference to a serious medical condition against Defendant Reineck for failing to timely escort Plaintiff to the medical department after the second attack, while Plaintiff was confined at Charlotte Correctional Institution.

On December 11, 2014, the Court entered an order granting in part and denying in part defendants' motion to dismiss. (See Doc. #53). The Court granted defendants' motion to the extent Eleventh Amendment immunity precluded Plaintiff from seeking monetary damages against the defendants in their official capacities. (Id. at 2.) The Court also determined that Plaintiff's request for injunctive relief was moot due to his transfer from Charlotte Correctional Institution. (Id.) Defendants' motion was otherwise denied for further development on the failure to protect claims against Defendants Reineck[2] and Severson stemming from both attacks in October, and a deliberate indifference to a serious medical condition against Reineck.

Defendants now move for summary judgment. Initially, Defendants argue that Plaintiff did not fully and properly exhaust

---

[2]At the motion to dismiss stage, Defendant Reineck had properly conceded that the Complaint plausibility stated a failure to protect claim against himself. (See Order at 3.)

his administrative grievances with regard to the second attack in October because he did not appeal the denial of his initial grievance. (Motion at 2-4.) Defendants further argue that with regard the early October attack involving inmate Solider, the day Plaintiff submitted his inmate grievance alleging that he feared for his life from his cellmate, Solider's threats, he was removed from the cell. With regard to the second attack by inmate Reed on Plaintiff on October 25, 2012, defendants point to the record to show that defendant Reineck did not work the shift when Plaintiff alleges the incident occurred. Thus, Reineck argues there is no genuine dispute of material fact concerning his failure to protect Plaintiff, or his deliberate indifference to Plaintiff's medical need following the attack because he was not working the shift when the incident occurred.

In Response, Plaintiff appears to abandon any claim concerning the early October attack involving inmate Solider because none of his responses address this incident. (See Docs. #66, #67, #71.) Turning to the incident at the end of October, Plaintiff argues that he did exhaust his claim, but does not provide any copy of the related appeal. Additionally, Plaintiff maintains that Reineck watched the late-October fight outside of the cell, did nothing to protect him or intervene, and failed to bring him for medical treatment after.

## II.

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party.  Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).  "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'"  Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).  Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

## III.

### A.  Exhaustion of Administrative Remedies

Defendants point to the Department of Correction's procedures on inmate grievance filing and argue that Plaintiff failed to fully

and properly exhaust his administrative remedies regarding the second attack in October because he did not file an appeal of the denial of his initial grievance.  Plaintiff contends that he did exhaust his claim.

The Prison Litigation Reform Act, which amended The Civil Rights of Institutionalized Persons Act, provides as follows:

> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e(a)(emphasis added).  Although prisoners are not required to plead exhaustion, Jones v. Bock, 549 U.S. 199, 216 (2007), "[t]here is no question that exhaustion is mandatory under the PLRA, and that unexhausted claims cannot be brought in court." Id. at 211; see also Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

To "properly exhaust" administrative remedies, a prisoner must complete the administrative review process, as set forth in the applicable prison grievance process.  Jones, 549 U.S. at 218. A prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  Woodford, 548 U.S. at 92-103.  However, an administrative remedy that was not discovered, and which could not

have been discovered through reasonable effort, until it was too late for it to be used is not an "available" remedy. Goebert v. Lee County, 510 F.3d 1312, 1324 (11th Cir. 2007). A remedy is not available if it is unknown or unknowable because such remedy is not "capable for use for the accomplishment of a purpose." Id. at 1323. Inmates are not required to "craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones." Turner v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008)(citations omitted).

Whether an inmate has exhausted his available administrative remedies is a factual issue that is properly made by the court. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Thus, "[e]ven though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits." Id. (footnote, internal quotations, and citations omitted). The defense of exhaustion is properly raised in a motion to dismiss as a "matter of judicial administration." Id. at 1375. Thus, the court is permitted to look beyond the pleadings to decide disputed issues of fact in connection with the exhaustion defense. Id. at 1377 n.16.

Pursuant to the Florida Administrative Code Chapter 33-103, Plaintiff is required to exhaust all available administrative

remedies before pursuing a civil rights action.  Specifically, the Florida Department of Corrections provides a three-step grievance procedure.  First, an inmate must normally file either an informal grievance or formal grievance depending on the nature of his complaint.  Fla. Admin. Code 33-103.006-.007.   If the inmate's issue is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the Florida Department of Corrections.  Id. at 33-103.007. Additionally, an inmate may bypass the filing of an informal and formal grievances and file emergency grievances, grievances of reprisal, and grievances of a sensitive nature directly with the Office of the Secretary.  Id. at 33-103.007(6).

The following facts are undisputed: Plaintiff filed two grievances concerning the October incidents: 1210-510-039 and 1210-510-140.  (See Complaint, Doc. #1-1 at 11-12; Motion at 3.) The first grievance dated October 10, 2012, pertained to inmate Solider's threats (although Solider is unnamed in the grievance), to which Severson responded the same day, and "approved" the grievance.  (Id.)  Inmate Solider was removed from Plaintiff's cell on October 10, and inmate Reed was moved into the cell.  (See OAG 005.)

Plaintiff's second grievance dated October 29, 2012, was filed after inmate Reed's attack and in the grievance he requested a room change due to "threats" and "altercations" with Reed. (See

Complaint, Doc. #1-2 at 1-2.)  That same day, Severson responded and denied Plaintiff's grievance as moot because staff advised him that the two inmates were already separated from each other on October 26, 2012.  (Id.)  In other words, either Plaintiff, or inmate Reed, was moved to another cell prior to the date Plaintiff filed the grievance.  (Id.)  Defendants contend that Plaintiff's failure to appeal the "denial" of this grievance means that he did not fully and properly exhaust administrative remedies.  The Court disagrees.

Defendants are correct that the Department of Corrections rules concerning exhaustion of administrative remedies require that an inmate pursue an appeal to the Office of the Secretary if the inmate's issue raised in the grievance is not resolved at the institutional level.  Here, however, Plaintiff's grievance concerning the second October attack was for all purposes resolved. Plaintiff requested that he be moved from inmate Reed's cell due to Reed's threats and altercations.  By the time he filed the grievance, a cell change had already happened, as noted by Severson.  Thus, the result Plaintiff sought, i.e. separation from inmate Reed, was essentially done, irrespective of Severson's "denial" of Plaintiff's grievance.  In other words, there was no adverse determination in his grievance for Plaintiff to appeal. Therefore, the Court denies defendants' motion to the extent they

contend Plaintiff failed to exhaust his administrative remedies concerning the second October attack.

**B.  Failure to Protect Claims**

The Supreme Court made clear that "prison officials have a duty . . . to protect prisoners from violence . . . ." Farmer v. Brennan, 511 U.S. 825, 833 (1994); see also Doe v. Ga. Dep't of Corr., 245 F. App'x 899 (11th Cir. 2007).  A violation of the Eighth Amendment occurs when a prison official acts with deliberate indifference to a substantial risk of harm to an inmate.  Farmer, 511 U.S. at 828.  "Deliberate indifference is not the same thing as negligence or carelessness." Maldonado v. Snead, 168 F. App'x 373 (11th Cir. 2006)(citing Ray v. Foltz, 370 F.3d 1079, 1083 (11th Cir. 2004)).  "Merely negligent failure to protect" an inmate from an attack does not give rise to a § 1983 claim.  Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003).  A plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists and that the prison official drew that inference.  Purcell v. Toombs County, 400 F.3d 1313, 1319-20; Carter, 352 F.3d at 1349. In other words, to show that an official had subjective knowledge, the court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." Id. at 1350.  "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for

commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. Farmer, 511 U.S. at 838.   Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence.   Id. at 842.

1. **Early October Incident involving inmate Solider**

The following facts are material and unless specified otherwise are undisputed.   On September 18, 2012, Plaintiff was assigned to bunk A3207U in the "A dormitory" at Charlotte Correctional.   (See OAG 007.)   Because Plaintiff was classified for disciplinary confinement status, his privileges were restricted and he was closely monitored by security checks every thirty minutes.   (See e.g., OAG 013-014.)   According to the Complaint, Plaintiff communicated with "security officers" asking that they move him on October 6, 2012, during the 5:00 p.m. to 11:00 p.m. shift and again on Monday, October 8, 2012.   Complaint at 3-5.   According to the Florida Department of Corrections' Daily Security Roster, Reineck was not working the 5:00 p.m. to 11:00 p.m. shift on October 6 and was not working at all on October 8. (OAG 8-9.)

On October 10, 2012, Plaintiff filed an inmate grievance complaining of threats from his cellmate Solider, which Severson reviewed and granted that same day.   (See Complaint, Doc. #1-1.) Plaintiff's cellmate named Solider was removed from the cell that

same day and inmate Reed was moved into the cell. (See OAG 005 (showing inmate Tyler Reed moved into cell A3207 on October 10, 2012).)

A review of the record shows no genuine issue of material fact concerning defendants' failure to protect Plaintiff during the early October incident with Plaintiff's cellmate, Solider.  As noted supra, Plaintiff's response to defendants' motion does not mention this incident and therefore appears to abandon this claim. Nevertheless, defendants' evidence shows that Reineck was not working during the shift Plaintiff claims he verbally asked un-identified "security officers" to move him from the cell due to his cellmate's threats.  Thus, there is no evidence to support a finding that Reineck had the requisite knowledge that Plaintiff was in fear of his cellmate named Solider.

Likewise, the evidence of record reveals that Severson was first notified by written inmate grievance dated October 10 that Plaintiff feared Solider, and Solider was removed from Plaintiff's cell on the same day the grievance was submitted.  Consequently, Reineck and Severson are entitled to the entry of summary judgment in their favor concerning the early October incident.

**2.  Late October Incident involving inmate Reed**

The following facts are material and are undisputed, unless noted otherwise.  On October 10, 2012, inmate Reed was moved into Plaintiff's cell when inmate Solider was moved out of the cell.

(See OAG 005 (showing inmate Tyler Reed moved into cell A3207 on October 10, 2012).)  On October 24, 2012, defendant Reineck worked the 5:00 a.m. to 5:00 p.m. shift as the housing officer in Dorm A. (See OAG 010.)   On October 25, the night the incident between Plaintiff and Reed occurred, Reineck was listed to work again during the day shift, but other correctional officers were scheduled to work the night shift. (See OAG 011-012.)  At 11:20 p.m. on October 25, Plaintiff declared a "medical emergency." (See OAG 013.)  Both Plaintiff and inmate Reed were removed from the cell and segregated into separate showers. (Id.)  The medical department treated both Plaintiff and inmate Reed for "minor abrasions." (See OAG 14.)

The record contains no genuine issue of material fact concerning defendants' failure to protect Plaintiff from inmate Reed.  Despite Plaintiff's allegations in his Complaint that he warned several correctional officials on October 24, 2012, sometime between 4 p.m. to 12:00 a.m., that Reed threatened to kill him, there is no evidence showing that Plaintiff provided any notice (orally or written) to either Severson or Reineck that he feared inmate Reed during the two week time period prior to the evening of October 25[3] when he declared a medical emergency.  To

---

[3]Notably, the Complaint alleges the inmate Reed incident occurred on October 26. (Complaint at 5.) Considering the evidence shows the incident occurred around 11:00 p.m. on October 25, the Court understands why Plaintiff wrote October 26.

the contrary, the evidence shows that Reineck did not work the night shift on October 24 when Plaintiff claims to have warned unnamed officers. (See OAG 010.)

Turning to the evening of the incident, Reineck was not present on October 25 at 11:00 p.m. because other correctional officials were working. (See OAG-011,[4] 012.) Plaintiff's self-serving allegations in the Complaint that Reineck watched the October 25 incident from outside of the cell and failed to intervene, which are unsupported by any evidence of record, are insufficient to create a genuine issue of material fact.

According to the Housing Unit Log, Plaintiff declared a medical emergency on October 25 at 11:09 p.m. Correctional officials responded to Plaintiff's emergency and segregated both inmates into separate showers. The medical records show that both inmates were treated for minor abrasions. Plaintiff's medical form entitled "abrasion/laceration protocol" dated October 25 also

---

[4]Defendants explain that Reineck worked the day shift on October 25. (See Motion at 7 (citing OAG 011).) Defendants' exhibit cited in support thereof shows only an officer "Alberto Benavides" working the day shift on October 25. (OAG 11.) It appears defendants inadvertently redacted more information than necessary. The Court may nonetheless issue this Opinion and Order granting defendants' motion for summary judgment because the fact that Reineck worked the day shift on October 25 is important, but not necessarily material to what happened the evening of October 25. Defendants' exhibits show that Reineck was not working on the evening of October 25 when the incident between Plaintiff and inmate Reed occurred because other correctional officials were scheduled. (See OAG 012-014.)

indicate similar "abrasions," an old human bite mark, and another
human bite marks, but "no bleeding."   (Complaint, Doc. #1-3.)
Both Plaintiff and inmate Reed told medical staff at this time
that they were "not fighting."  (See OAG 014.)

The record contains no genuine dispute of material fact
concerning defendant Reineck's failure to protect Plaintiff, or
any delay in escorting Plaintiff for medical treatment from
injuries he sustained from the October 25 incident because he was
not working the night shift when the incident occurred.   The
correctional authorities who worked the night shift on October 25,
quickly responded to Plaintiff's declared medical emergency and
separated the two inmates.

Defendant Severson's first involvement with the late October
attack was on October 29 when he denied as moot Plaintiff's inmate
grievance dated October 25.   Severson denied the grievance as moot
because Plaintiff was already separated from inmate Reed.    The
October 25 grievance Severson reviewed after the incident occurred
was the first notice Severson had concerning any issue between
Plaintiff and his cellmate Reed.   There is no evidence to support
a finding that Plaintiff ever told either Severson or Reineck that
he feared inmate Reed prior to the October 25 incident and that
they failed to take protective measures.   Thus, defendants are
entitled to the entry of summary judgment in their favor.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  Defendants' motion for summary judgment (Doc. #65) is **GRANTED**.

2.  The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this   1st   day of April, 2016.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA: ftmp-1
Copies: All Parties of Record